## RODIMON *v.* REDING.

The time of travail, within the meaning of the Revised Statutes, chapter 68, section 4, begins when the pains begin which result in childbirth. Whether it cover any period after the birth, *quære ?*

The declaration required by the statute referred to, to be made by the mother during that time, is sufficient, if it is capable of being understood by plain reference to surrounding circumstances and antecedent events. " I have told the truth, but W. has not," may be sufficient, if it may be understood by the aid of such reference.

COMPLAINT, made before a justice of peace on the 27th day of October, 1845, charging the defendant with being the father of a child with which the complainant, a single woman, was then pregnant. The defendant pleaded not guilty, and upon examination was held to answer at the court of common pleas next to be holden in the district.

In that court, the complainant appeared and was offered as a witness, and a question was made as to her competency. Upon this point evidence was exhibited by the parties. It appeared that the complainant was taken with the pains of labor on the 27th of December, 1845, at about three o'clock in the morning, and gave birth to her child at about two o'clock in the afternoon on that day.

Her mother and three other women, Hicks, Keyes and Kemp, were present during the interval, and at the birth.

Mrs. Rodimon, the complainant's mother, testified that the complainant had been in the habit of speaking of the defendant very frequently, and she called him Warren. She further testified, " I was in the room, putting some wood in the stove, and she said, ' Oh! dear mother, I don't think I shall live ; but I have one thing to comfort me ; I have told the truth, whether I die or live, and Warren hasn't.' Mrs. Kemp was in the room at the time, making the bed, and I was at the stove near my daughter. Whether Mrs. Kemp heard it or not, I do not know." In answer to interrogatories, she further testified, that she did not at any time state to Mrs. Hicks that the defendant's name was not mentioned on that day by the complainant, and that she first communicated this declaration of her daughter to Mrs. Keyes or Mrs. Hicks.

Betsey Keyes testified, that during her labor the complainant said to her, " I shall die! shall I not ?" The witness replied, " I guess not," or, " I hope not," and the complainant then said, " If I die, I have one thing to comfort me ; I have told the truth and he hasn't." " The witness heard her repeat this a number of times before the child was born."

Phœbe Hicks testified that she was present nearly all the time of the complainant's labor, and did not hear her speak of the defendant as the father of the child of which she was about to be delivered, nor hear her mention his name during that time, nor hear her mother say that the complainant so named him :

That on the last Friday of January, 1846, " I asked Eliza (the complainant), if the defendant had been down to settle with her. She said no. I told her that I had heard that he had, and some said that he would, if she had not said hard things about him. She said she had not said any thing more than was right to say. I then said,

' You did not name his name during the time of travail, did you ?' and she said, ' No, I did not.' Then I spoke to Mrs. Rodimon, and said, ' You did not hear her, did you ?' and she said, ' No, she never named his name that day in the time of travail; but, said she, ' if I had been in her place I would.' "

She further testified that she had been requested by the defendant, through another party, to ask Mrs. Rodimon and the complainant, if the latter named the defendant on that day.

J. S. Bryant testified, that he heard the complainant swear before the magistrate that the defendant was the father of the child with which she was pregnant.

One witness testified, that about one hour and a half after the birth of the child, the complainant being asked what she should name her boy, gave the name of the defendant, who, she said, was its father.

*Perley*, for the complainant. The complainant having by her complaint charged the defendant according to the statute, chapter 69, section 4, " declared in the time of her travail the same person to be the father of her child." No form of declaration is given, and no formality is required. Any thing said, manifesting that the same person whom she has before charged, is the father, is enough. The object of the statute is to guard against falsehood; the danger of her situation will ordinarily induce her to speak the truth. In 20 Pick. Rep. 99, the words were, " I hope that George will never bring another girl to this ;" it appearing that she sometimes called the defendant by that name, and it was held to be a sufficient declaration.

To declare is to make plain, to make known, to manifest, to communicate by words, to show to the understanding. Webster's Dictionary. Did the complainant make known to those around her that the defendant was the father of her child ? The period to which the testimony relates was undoubtedly the time of her travail.

Rodimon *v.* Reding.

It is perfectly clear that she meant to say that the charge she had made against the defendant was true. How could she have used plainer words? By Warren, she meant the defendant. She spoke of the same subject to Mrs. Keyes, though she did not mention any names. If her words carry the idea required, it is enough. 8 Greenl. 164; 5 Mass. 518; 8 Pick. 561. Her declarations after the birth were competent.

*Morrison*, for the defendant. To render the witness competent, she should come clearly within the terms and conditions of the statute. It creates an exception to the common law of evidence.

The words were not spoken as testified by her mother, she being contradicted by other evidence. The declarations should be made to all the persons attending her; and it is not sufficient that they are made to one of them.

*Wilcox*, on the same side. This a charge that is made easily, and is disproved with difficulty. 20 Pick. 99; 21 do. 133. Upon the principles stated in those cases, does she come within the statute? Mrs. Keyes did not hear the defendant's name mentioned. Her evidence tends as much to charge any other person, as the defendant. There was no language indicating him.

Her mother goes a little further, but her testimony is not sufficient, neither is it true. The court must find whether the witnesses are to be believed. 20 Pick. 99. She is, in substance, contradicted by Mrs. Keyes. That she and Mrs. Hicks did not hear the defendant's name mentioned, having been present nearly all the time, is a contradiction of the testimony of Mrs. Rodimon. She and the complainant both admit that the defendant was not named during travail. And if true that the declarations were made by the complainant, were they made in time of travail? They were made in the morning, and the birth of the child was at two in the afternoon.

There is nothing to show what was meant by what she said about speaking the truth. There is no reason to suppose that she intended his plea of "not guilty," before the magistrate. No allusion is made to conversation between herself and the respondent.

*Perley,* in reply. Must the persons attending all be told who was the father of the child, and must they be told all together, or may they be told successively? This is altogether too refined.

Is our evidence incredible? If she meant to make a case, why did she not make a clear and explicit one?

The cases show that the court are not called on to examine contradictory evidence.

The witness who contradicts, went with a purpose to find out contradictions, and to seek statements that might conflict with the evidence necessary to establish the case.

The mother testifies that the declaration was made in the time of travail.

GILCHRIST, J. The question in this case is, whether the complainant has complied with the conditions required by law, for enabling her to testify upon the trial of her complaint, charging the defendant with being the father of her child. This question, like others affecting the competency of witnesses, is properly addressed to the court, whose duty it is to examine the evidence, and to decide according to its effect.

It appears that in October, 1845, the complaint was made, and sworn to by the complainant before a magistrate, and that the defendant, upon being brought up, pleaded not guilty to the charge. The evidence then shows that at an early hour on the morning of the 27th of December following, she was taken with the pains that ordinarily precede child-birth, and was delivered at two o'clock in the afternoon on that day. This appears to have been with the complainant the period denoted in the

statute as "the time of her travail." It is the period dur-
ing which the pains prevail that result in child-birth.
Whether the time of travail, according to the meaning of
the statute, extends beyond that crisis, so as to render the
declarations made by the complainant soon after the birth,
competent to be shown here, need not be determined,
since it does not appear that in this case the complain-
ant's declarations last named were made within a period
which can be said to fall within that of the travail, accord-
ing to the extended meaning given by some authorities
to that word. *Dennett* v. *Kneeland*, 6 Greenl. 460; *Bacon*
v. *Harrington*, 5 Pick. 63.

The statute requires that the complainant, in order to
be a competent witness, shall have declared, in the time
of her travail, to the persons attending her, the same
person to have been the father of the child, whom she has
previously charged on oath, required to have been made
by her before the justice of the peace.

It is very plain, from the nature of the case as well as
from the authorities, that such declaration need not be in
any prescribed form. The statute, which furnishes the
only guide on the subject, prescribes no form. If a
form were requisite, the object sought by the law would
probably seldom be attained. It is sufficient, if the
declaration be made in such phrase as may be understood
by the parties hearing it; and it is no matter whether the
words are sufficient of themselves to convey the idea
intended or not; provided they may derive a meaning,
by reference to other matters, sufficient to give them the
significance of the requisite declaration.

In the pain and apprehension of that period which the
law presumes to lend peculiar inducements to the sufferer
to speak the truth, it would be useless to require and
unreasonable to expect a formal declaration; or a declara-
tion in terms so precise and full as to be perfectly intelli-
gible without reference to surrounding circumstances, or
to antecedents not distinctly explained by the party.

If such exactness were required, the effect might be to exclude from the benefits of the law those who, for want of memory or self-command on such an occasion, would fail to be exact, and thus we should be more likely to exclude the honest and truthful, than the dishonest and designing; for a formal declaration would be more open to just suspicion than one which, from the circumstances attending it, would have less the appearance of premeditation. A formal declaration would seem more like a lesson "learned and conned by rote," than would a less formal statement, conveying the idea, but made in a manner in which we might expect an undesigning person in such a condition to express herself. *McManagil* v. *Ross*, 20 Pick. 99.

Is there evidence that the complainant, on the 27th of December, between the time when her pains began and the birth of the child, declared, in effect, that the defendant was its father?

Betsey Keyes testifies, that during that time the complainant said to her, "I shall die! shall I not?" The witness replied, "I guess not," or, "I hope not." The complainant then said, "If I die, I have one thing to comfort me: I have told the truth, and he ha'n't." This, the witness says, she repeated a number of times before the child was born.

These words, the mother, Rodimon, testifies that the complainant said to her in substance: "Oh! dear mother! I do n't think I shall live. But I have one thing to comfort me; I have told the truth, whether I die or live, and Warren hasn't." There is evidence tending to discredit this witness. She appears to have said, upon one occasion, that she did not hear her daughter name the defendant during her travail; and the witness who swears to that, did not hear the complainant speak of the defendant as the father of the child, although present nearly all the time of the labor. Did she hear what was said to Betsy

Keyes? Some inducements appear, moreover, to have been presented to the mind of the mother, to deny that her daughter had accused the defendant. A hope was held out that he might be soothed into measures for the benefit of the young woman. And the woman (Hicks) who has testified to the facts, appears to have been sent to watch for admissions.

On the whole, the evidence that is relied on to impeach the testimony of the mother, is itself a fair subject of some distrust.

But supposing her testimony to have been inaccurate, so far as it differed from that of Mrs. Keyes, and that the name of the defendant was not spoken, is there not fair ground to presume that the party referred to by the complainant was the defendant? It is fair to presume that when she consoled herself in the prospect and apprehension of death, with having spoken the truth, she might have referred to a subject having some connection with her condition at the moment; and in saying that some man had not spoken the truth, she may have referred to the only party who appears to have brought his statements in conflict with her own, on the subject to which it related. It would hardly have made the case plainer if she had used the defendant's name, as testified by Rodimon, instead of the personal pronoun, according to the testimony of Keyes. In either case her declaration would have to derive its interpretation from surrounding and antecedent circumstances and events.

On the evidence, therefore, we are satisfied that the complainant intended, by what she said, that she had told the truth in swearing to her complaint, and that the party gainsaying her had not done so; and that no other party than the defendant could have been intended, since he alone by his plea had disputed her assertion. The witness is therefore competent.